IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VERNELL HARRIS, JR.,             : Civ. No. 1:24-CV-1047
                                 :
     Plaintiff,                  :
                                 :
     v.                          :
                                 : (Chief Magistrate Judge Bloom)
G.B.K TRANSPORT, INC.,           :
                                 :
     Defendant.                  :

## MEMORANDUM OPINION

### I. Introduction

This case comes before us for consideration of a motion to dismiss filed by the defendant, G.B.K. Transport, Inc. ("GBK"). (Doc. 17).  The plaintiff, Vernell Harris, Jr., brought this action against GBK, his former employer, alleging claims of disability discrimination, retaliation, and interference pursuant to the Americans with Disabilities Act ("ADA") and Family and Medical Leave Act ("FMLA").  (Doc. 12).  Harris' claims arise from a series of events in which he asserts that GBK refused to accommodate his disability, retaliated against him after he filed complaints through the Pennsylvania Human Resources Commission ("PHRC") and Equal Employment Opportunity Commission ("EEOC"), interfered with his ability to utilize FMLA leave, and ultimately

terminated his employment after a string of disciplinary notices that Harris alleges were unjustified and made in retaliation to his complaint. GBK now moves to dismiss the complaint, arguing that Harris has failed to state a claim upon which relief can be granted. (Doc. 17).

After consideration, we conclude that Harris' claims with respect to his first period of employment from June 28, 2021, to May 4, 2022 are barred due to his failure to properly exhaust administrative remedies. However, we find that Harris pleaded sufficient facts to support his claims with respect to his second period of employment from October 4, 2022, to September 8, 2023.  Therefore, the motion will be granted in part and denied in part as set forth below.

## II.  Background

Harris became employed as a delivery truck driver for GBK in June of 2021.  (Doc. 12 ¶ 8).  When he was first hired, Harris notified GBK that he had arthritis in both knees. (*Id.* ¶ 12).  In March of 2022, Harris suffered a work-related injury to his back. (*Id.* at ¶ 14).  Harris reported his injury to his manager, Chad Monderewicz, who reviewed video footage and confirmed Harris' work-related injury. (*Id.* at ¶¶ 14-15).  On May 1, 2022, Harris received medical treatment and was given a doctor's

note that included a 50-pound lifting restriction for one week. (*Id.* at ¶ 17). Harris alleges that Monderewicz refused to accommodate this request based on his belief that certain packages on Harris' truck weighed more than 50 pounds. (*Id.* at ¶¶ 18, 20). As a result, Harris asserts he was constructively discharged from his position with GBK on May 4, 2022. (*Id.* at ¶ 23).

In October of 2022, GBK rehired Harris as a delivery driver. (Doc. 12 at ¶ 33). On February 7, 2023, Harris provided Monderewicz with another doctor's note and requested a modified work schedule that limited Harris' delivery route for one week to no more than 75 stops. (*Id.* at ¶ 34). Harris alleges that Monderewicz refused to grant the requested accommodation and instead forced Harris to take unpaid leave for that week. (*Id.* at ¶ 35). He claims that Monderewicz told him that GBK was not required to accommodate a pre-existing condition, and that accommodations were only for workers' compensation injuries. (*Id.* ¶ 39). Harris contacted various GBK managers to attempt to discuss his accommodation request, identifying instances where accommodations were previously granted for other drivers. (*Id.* at ¶ 36).

3

On February 28, 2023, Harris provided Monderewicz with an FMLA certification signed by his medical provider, which indicated that Harris's chronic bilateral knee pain began in 2010 and that he would need to work a reduced schedule by decreasing the amount of stops by 25% for one year. (Doc. 12 at ¶ 12; 12-6 at 5). The certification also included a request for intermittent FMLA leave approximately three to four times per month. (Doc. 12-6 at 5). On March 14, 2023, Monderewicz notified Harris that 480 hours of intermittent FMLA was approved but subject to certain conditions and restrictions, including the potential for different routes, areas, or terminals. (Doc. 12 ¶ 47). Harris claims that GBK forced him to take FMLA leave without pay if he finished his routes early, whereas other non-disabled and work-related injury drivers were paid for the remaining hours of their shift. (Doc. 12 at ¶¶ 48-49). Harris also asserts that GBK revoked an accommodation previously granted to him, which allowed Harris to start his shift early, and instead forced him to take FMLA leave without pay. (*Id.* at ¶ 50).

On April 26 2023, Harris filed his first complaint with the PHRC, which was dual filed with the EEOC. (Doc. 12 at ¶ 24). The PHRC notified Harris that it did not have jurisdiction over the complaint and

that his case was transferred to the EEOC, who then transferred the case back to the PHRC for investigation. (*Id.* at ¶¶ 26-27; Doc. 12-2). Harris continued to work for GBK after filing his PHRC complaint. (*See generally* Doc. 12).

In August of 2023, Harris was issued two disciplinary notices for failing to deliver packages to customers. (Doc. 12 at ¶¶ 51, 53). Harris subsequently reached out to GBK management to dispute the disciplinary notices and voice his concerns about alleged retaliation for filing his PHRC complaint. (*Id.* at ¶¶ 52, 54-55). Thereafter, on August 22, 2023, GBK changed Harris' route consisting of 130 to 170 stops to a "floater route," which consisted of 70 to 105 stops and ultimately resulted in Harris receiving less compensation. (*Id.* at ¶ 57). The same day, Harris emailed GBK management to discuss what he felt was ongoing discrimination and retaliation, including assignment to the 'floater' route, denying him a previously accommodated route, and to request a meeting with members of management. (*Id.* at ¶¶ 58-59). It is unclear from the complaint whether this meeting ever occurred.

In September of 2023, Harris received two additional disciplinary notices for allegedly miscoding his deliveries and refusing to deliver a

package. (*Id.* at ¶¶ 60, 62). Harris again emailed GBK management to explain why he felt the disciplinary notices were unjustified and to address what he characterized as ongoing discrimination and retaliation. (*Id.* at ¶ 61). Two days later, Harris was terminated for insubordination and failure to perform his job responsibilities. (*Id.* ¶ 67). Harris then filed a second PHRC complaint against GBK on September 19, 2023, including allegations of discrimination and retaliation since the filing of his first complaint. (*Id.* at ¶ 68; P-12).

Harris filed his original complaint in this court against GBK on June 26, 2024, and GBK moved to dismiss the complaint. (Docs. 1, 7).[1] Harris filed an amended complaint on November 4, 2024. (Doc. 12). GBK now moves to dismiss the amended complaint, arguing that Harris failed to state a claim upon which relief can be granted. (Doc. 17). After consideration, the motion will be granted in part and denied in part.

---

[1] Because the plaintiff filed an amended complaint, the defendant's initial motion to dismiss (Doc. 7) will be denied as moot. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (citations omitted) ("[I]n general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.").

III.  **Discussion**

A. **Motion to Dismiss – Standard of Review**

Defendant GBK filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) permits the court to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Under federal pleading standards, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

As the Third Circuit Court of Appeals has aptly summarized:

[A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v.*

*White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on any other part of the record when deciding a motion to dismiss. *Jordan*, 20 F.3d at 1261.

### B. The Defendant's Motion to Dismiss will be Granted in Part and Denied in Part.

Our review of the complaint reveals that, with respect to his second period of employment from October of 2022 to September of 2023, Harris has sufficiently stated a claim for disability discrimination and failure to accommodate his disability pursuant to the ADA. He further pleads sufficient facts to state claims of FMLA interference and retaliation. However, all claims with respect to Harris' first period of employment from June of 2021 to May of 2022 are barred as a result of Harris' failure to properly exhaust administrative remedies.

1.    <u>Claims under the ADA</u>

   a. <u>Exhaustion of Administrative Remedies</u>

Before a plaintiff can file a complaint of employment discrimination pursuant to the ADA and PHRA, he must first exhaust his administrative remedies. *See Churchill v. Star Enterprises*, 183 F.3d 184, 190 (3d Cir. 1999). Under the PHRA, the complainant must file their administrative complaint within 180 days of the alleged discriminatory action. 43 Pa. Cons. Stat. § 959(h). Similarly, a complainant must file their administrative complaint with the EEOC within 180 days of the alleged act of discrimination, except in cases where the complainant initially made their complaint to a state or local agency, then the administrative complaint must be filed within 300 days. 42 U.S.C. § 2000e-5(e)(1). Failure to file a timely administrative complaint precludes the complainant from any judicial remedies under the both the PHRA and EEOC. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

The continuing violation doctrine is an exception to the timeliness requirement that "allows courts to consider conduct that would ordinarily

be time barred as long as the untimely incidents represent an ongoing unlawful employment practice." *Aubrey v. City of Bethlehem, Fire Dept.*, 466 F. App'x 88, 92-93 (3d Cir. 2012) (quoting *Morgan*, 536 U.S. at 107) (internal quotation marks and citation omitted). However, the doctrine cannot be used to preserve time barred claims for "discrete retaliatory or discriminatory acts," since "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. The Supreme Court defines discrete discriminatory acts as those that are "easy to identify" such as "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114.

Here, Harris alleges disability discrimination and retaliation claims based on GBK's failure to accommodate the lifting restriction, which he claims resulted in his constructive discharge on May 4, 2022. However, Harris filed his first PHRC complaint on April 26, 2023, 357 days after the alleged denial of an accommodation and constructive discharge. Denial of a reasonable accommodation and discharge from employment are both considered "discrete discriminatory acts" that trigger the 180-day period in which to file an administrative complaint. !!! *Mercer v. SEPTA*, 608 F. App'x 60, 63 (3d Cir. 2015); *Morgan*, 536 U.S.

11

at 114.    Accordingly, Harris' claims of constructive discharge are time barred, and we will dismiss all claims with respect to Harris' first period of employment with GBK from June 28, 2021, to May 4, 2022.

### b. <u>Disability Discrimination</u>

Harris asserts that GBK discriminated against him because of his disability.  The ADA prohibits employers from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).    Unlawful discrimination occurs when the employer takes adverse action that is motivated by the individual's disability or the employer's belief that the individual had a disability, or when the employer fails to make reasonable accommodations for the employee's disability.  *See Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d Cir. 1999); *Fuoco v. Lehigh Univ.,* 981 F. Supp. 352, 361 (E.D. Pa. 2013).

A plaintiff establishes a prima facie case of discrimination under the ADA by showing: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions

of the job, with or without reasonable accommodations by the employer;
and (3) he has suffered an otherwise adverse employment decision as a
result of discrimination." *Gaul v. Lucent Technologies, Inc.*, 134 F.3d
576, 580 (3d Cir. 1998). The ADA defines a disability as "(A) a physical
or mental impairment that substantially limits one or more of the major
life activities of such individual; (B) a record of such impairment; or (C)
being regarded as having such an impairment." 42 U.S.C. § 12102(2).
Further, an adverse employment decision is one that is "serious and
tangible enough to alter an employee's compensation, terms, conditions,
or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d
760 251, 263 (3d Cir. 2001).

In this case, Harris asserts that GBK discriminated against him
when it wrongfully terminated his employment due to his disability.
GBK does not contest that Harris was otherwise qualified, but it does
argue that Harris is not disabled as defined by the ADA. However,
Harris asserts that his physical impairment, *i.e.* his bilateral knee
arthritis, limits his ability to walk, run, stoop, bend, climb, sit, or stand
for long periods of time, all of which are "major life activities" as defined
by the ADA. 42 U.S.C. §12102(2)(A). In our view, these allegations are

sufficient at this stage to survive the motion to dismiss.[2] *Burbach v. Arconic Corp.*, 561 F. Supp. 3d 508, 519 (W.D. Pa. 2021) ("The effect of this impairment on Plaintiff, 'whether he was in fact disabled' and the duration of that disability is not properly resolved at the motion to dismiss stage.") (citation omitted).

Additionally, Harris pleaded facts sufficient to show that he suffered an adverse employment action when he was removed from his previous route to one that provided less compensation and when he ultimately terminated from GBK. *Grossberg v. Hudson Cnty. Dep't of Hum. Servs.*, 740 F. App'x 762, 764 (3d Cir. 2018) ("We define 'adverse employment' decision as one in which an employer discharges, refuses to hire, or makes a decision that is serious enough to alter the employee's compensation…") (citation omitted). Accordingly, at this stage where we must accept the factual allegations in the amended complaint as true, we conclude that Harris has sufficiently alleged a claim for disability discrimination under the ADA.

---

[2] Although GBK asserts that it did not regard Harris as disabled at the time of his employment, we do not address this issue because Harris successfully alleges that he had a disability as a result of a physical impairment that substantially limited one or more of his major life activities.

### c. Failure to Accommodate

Harris further claims that GBK failed to accommodate his disability in violation of the ADA.  The ADA also provides that an employer discriminates against a qualified individual with a disability when the employer fails to make "reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004) (quoting *Taylor*, 184 F.3d at 306) (internal quotations and citations omitted).  To determine the appropriate reasonable accommodation, the ADA requires that an employer and employee engage in an interactive process.  *Taylor*, 184 F.3d at 312.  Specifically, "[o]nce a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation." *Id.* at 311 (quoting 29 C.F.R. pt. 1630, App. § 1630.9 at 359) (quotations omitted).

To establish that the defendant did not properly engage in the interactive process, plaintiff must demonstrate that:

> "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith."

*Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 330-31 (3d Cir. 2003); *Taylor*, 184 F.3d at 319-20.

Here, we conclude that Harris pleaded sufficient facts to show that GBK did not properly engage in the interactive process and as a result, failed to accommodate his alleged disability.  Harris asserts that he informed GBK of his disability at the time he was first hired.  The amended complaint alleges that he requested an accommodation consisting of a limited delivery route for one week based on a medical note from his provider.  According to Harris, rather than engaging in an interactive process, Monderewicz, who allegedly knew of Harris' disability since the onset of Harris' employment with GBK, denied his request and instead required him to take unpaid leave.  Accordingly, at the motion to dismiss stage, where we must accept these allegations as true, we conclude that Harris has sufficiently alleged that GBK failed to engage in an interactive process and accommodate his disability in violation of the ADA.  *See e.g.*, *Mills v. Temple Univ.*, 869 F. Supp. 2d

609, 624 (E.D. Pa. 2012) (denying summary judgment where a jury could find that the employer's offer of unpaid leave was not a good faith response to an accommodation request).

### d. Retaliation

Harris also asserts that he was retaliated against after he filed his PHRC and EEOC complaints. The ADA retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge" under the ADA. 42 U.S.C. § 12203(a). Therefore, to state a prima facie case of retaliation under the ADA, a plaintiff must show (1) a protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Williams*, 380 F.3d at 759.

Here, we conclude that Harris sufficiently stated a claim for retaliation based on the filing of his PHRA and EEOC complaints. At the outset, Harris' filing of the complaints undoubtedly constitutes protected activity. Further, the amended complaint asserts that GBK

took adverse action when they terminated his employment shortly after he notified them of his PHRA and EEOC complaints. *See e.g.*, *Dreibelbis v. Cnty. of Berks*, 438 F. Supp. 3d 304, 319 (E.D. Pa. 2020) (termination constitutes an "adverse employment action" for ADA retaliation purposes). Harris disputes the validity of the disciplinary actions and alleges that these disciplines were issued because he had filed complaints of discrimination. Accordingly, Harris has pleaded facts to show a causal connection between his protected activity and GBK's alleged adverse action against him.

To the extent that Harris alleges that GBK retaliated against him for requesting an accommodation, we note that a failure to accommodate claim cannot also be characterized as a retaliation claim. *Pagonakis v. Express LLC*, 315 F. App'x 425, 431 (3d Cir. 2009). In fact, courts in this district have dismissed ADA retaliation claims based only on an employer's denial of a requested accommodation. *See e.g.*, *Garner v. Sch. Dist. of Phila.*, 63 F. Supp. 3d 483, 500 (E.D. Pa. 2012) (dismissing the plaintiff's retaliation claim that was a "repackaged" statement of his failure to accommodate claim); *Semcheski v. Cunningham Lindsey U.S., Inc.*, 2018 WL 3417219, at *6 (M.D. Pa. July 13, 2018) (dismissing the

plaintiff's retaliation claim where the claim was, in substance, a reiteration of his failure to accommodate claim); *Barnard v. Lackawanna County*, 2017 WL 4233030, at *7 (M.D. Pa. Sept. 25, 2017) (dismissing a retaliation claim that was not "separate and apart from the discrimination and failure to accommodate claims"); *see also Williams*, 230 F. Supp. 2d at 639 (dismissing a retaliation claim that was, in substance, a claim of a failure to accommodate). Accordingly, we conclude that Harris' claim of retaliation in response to his requested accommodation is more aptly characterized as a failure-to-accommodate claim than a retaliation claim.

### e. Punitive Damages

A plaintiff may recover punitive damages under the ADA if they can demonstrate that the defendant "engaged in discriminatory practice. . . with malice or with reckless indifference." 42 U.S.C. § 1981a(b)(1).

Harris claims punitive damages under his claims for disability discrimination and failure to accommodate. GBK argues that Harris' claim for punitive damages under the ADA and PHRA must be dismissed because Harris fails to allege facts to show that GBK discriminated against him and because punitive damages are not available under the

PHRA.  Our reading of the amended complaint does not reveal that Harris made a claim for punitive damages under the PHRA.  Further, we agree with Harris that at the motion to dismiss stage, it would be premature to determine whether punitive damages under the ADA are appropriate.  *See Miller v. Helm*, 2017 WL 6405738, at *7 *M.D. Pa. Dec. 15, 2017) (finding that punitive damages are "a fact-intensive issue inappropriate for resolution at the motion to dismiss stage, where no factual record has yet been developed.").  Accordingly, we will deny GBK's request to strike Harris' claim for punitive damages.

### 2.  FMLA Claims

Harris also alleges that GBK interfered with and retaliated against him because he exercised his rights under the FMLA.  After consideration, we conclude that Harris pleaded sufficient facts to show that GBK denied him full use of FMLA benefits and retaliated against him in his attempt to utilize such benefits.  Accordingly, we will deny GBK's motion to dismiss with respect to both claims.

### a.  Interference

As relevant here, the FMLA allows eligible employees to utilize a total of 12 work weeks of leave for "serious health conditions that makes

the employee unable to perform the functions of the position of such employee." 29 U.S.C. §§ 2611-2612. Following a qualified absence, the employee is entitled to reinstatement to the former position or an alternate one with equivalent pay, benefits, and working conditions. *Id.* § 2614(a)(1). The FMLA also protects against employer interference and retaliation, as the Third Circuit has noted:

> [W]hen employees invoke rights granted under the FMLA, employers may not "interfere with, restrain, or deny the exercise of or attempt to exercise" these rights. Nor may employers "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful." The former provision is generally, if imperfectly, referred to as "interference" whereas the latter is often referred to as "retaliation."

*Lichtenstein v. Univ. of Pittsburgh Medical Center*, 691 F.3d 294, 301 (3d Cir. 2012) (internal citations omitted).

In order to state an interference claim under the FMLA, the plaintiff must establish (1) he was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) he was entitled to FMLA leave; (4) he gave notice to the defendant for his intention to take FMLA leave; and (5) he was denied benefits to which he or she was entitled under the FMLA. *See Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (citing *Johnson v. Cmty. Coll. of Allegheny*

*Cnty.*, 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008)).  Interference claims under the FMLA are not about discrimination, but about whether the employer provided the employee with FMLA entitlements.  *Callison v. City of Phila.*, 430 F.3d 117, 119-20 (3d Cir. 2005) ("An interference action is not about discrimination, it is only about whether the employer provided the employee with entitlements guaranteed by the FMLA.").

GBK argues that Harris was not an "eligible employee" under the FMLA.  However, GBK has waived its ability to dispute Harris' eligibility under the doctrine of equitable estoppel because GBK granted Harris' request for FMLA leave.  The Third Circuit has held that the doctrine of equitable estoppel applies to FMLA cases.  *Leese v. Adelphoi Village, Inc.*, 516 F. App'x 192, 193 (3d Cir. 2013).  The traditional elements of equitable estoppel are: "(1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment."  *Id.* at 194 (citing *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987)).

Here, Harris alleges that he applied for, and was granted, intermittent FMLA leave. (Doc. 12 ¶¶ 11, 41-47).  Accordingly, we conclude that GBK cannot now assert that Harris was a not an eligible employee. *See e.g.*, *Roberts v. McCormick*, 2023 WL 4315126, at *3 (E.D.

Pa. July 3, 2023) ("[E]quitable estoppel may 'provide a means of redress for employees who detrimentally rely on their employers' misrepresentations about FMLA eligibility.'") (citation omitted). Taking the facts alleged in the amended complaint as true, Harris relied on GBK's representations that he was eligible for FMLA leave, and in fact, was granted intermittent FMLA leave. When Harris attempted to utilize this leave, he allegedly was removed from his regular route to one with less compensation and subsequently terminated from employment, ultimately denying him the use of his FMLA benefits. Accordingly, we conclude that Harris has sufficiently stated an FMLA interference claim.

### b. Retaliation

Harris also asserts that GBK retaliated against him for using his FMLA leave. A plaintiff alleging FMLA retaliation must show that "(1) he invoked his right to FMLA-qualifying leave; (2) he suffered an adverse employment decision; and (3) the adverse action was causally related to his invocation of rights." *Lichtenstein*, 691 F.3d at 301-02. An adverse employment action is one that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an

employee." *Budhun v. Reading Hosp. and Medical Center*, 765 F.3d 245, 257 (3d Cir. 2014) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d. Cir 1997)).   A plaintiff demonstrates a causal connection through "either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link." *Robinson*, 120 F.3d at 258 (citing *Lauren W. ex rel Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Here, Harris alleges that shortly after he notified GBK of his intent to use his FMLA leave, GBK began issuing him a number of disciplinary notices and ultimately terminated his employment.   Harris disputes the validity of the disciplines and asserts that they were issued in retaliation for using his FMLA leave.   Accordingly, we conclude that Harris has sufficiently alleged facts to support an FMLA retaliation claim.

## IV.   Conclusion

For the foregoing reasons, the defendants' motion to dismiss (Doc. 17) will be GRANTED IN PART AND DENIED IN PART as follows:

1. The motion will be DENIED as to the claims of ADA disability discrimination, failure to accommodate, and retaliation, and FMLA

24

interference and retaliation with respect to Harris' employment from October 4, 2022, to September 8, 2023; and

2. The motion will be GRANTED as to all claims with respect to Harris' initial employment with GBK from June 28, 2021, to May 4, 2022, and these claims will be DISMISSED WITH PREJUDICE.

An appropriate order follows.

Submitted this 28th day of February 2025.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge